<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | Civil Action No. 06-1453 (JAP) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION & ORDER |
| **UNITED PARCEL SERVICE,** | |
| Defendant. | |

<u>**BONGIOVANNI, United States Magistrate Judge**</u>

This matter comes before the Court upon Motion by Plaintiff-Intervenor Roniss G. Mason ("Mr. Mason" or "Intervenor") for Interest, Attorney's Fees and Expenses. [Docket Entry No. 132]. Defendant United Parcel Service ("Defendant" or "UPS") opposes the Motion. The Court has fully reviewed and considered all of the papers submitted in support of and in opposition to Mr. Mason's Motion,[1] as well as counsel's argument heard on September 23, 2009. For the reasons set forth more fully below, Mr. Mason's Motion for Interest, Attorney's Fees and Expenses shall be GRANTED IN PART.

---

[1] The Court has received documents from Mr. Mason, which were submitted substantially past the deadline for the filing of any Reply papers. Mr. Mason did not seek the Court's permission to file same. Defendant requests that Mr. Mason's supplemental submissions be stricken from the record. Defendant also requests that the Court not consider documents submitted by the Equal Employment Opportunity Commission ("EEOC") in deciding the instant Motion. The Court finds it unnecessary to consider Defendant's request to strike because neither the supplemental documents submitted by Mr. Mason nor the EEOC's submission affected the Court's decision of the pending Motion in any way.

I.     PROCEDURAL HISTORY

On March 27, 2006, the EEOC filed the underlying Complaint in this action, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I"). [Docket Entry No. 1]. On April 24, 2006, Mr. Mason filed a Motion to Intervene as a plaintiff in this matter. [Docket Entry No. 3]. On May 18, 2006, Mr. Mason's Motion to Intervene was granted and, on the same date, Mr. Mason filed his Complaint, alleging violations of Title VII and the New Jersey Law Against Discrimination (the "LAD"). [Docket Entry Nos. 4 & 5]. After completing discovery, this matter proceeded to trial before the Honorable Joel A. Pisano, U.S.D.J. and on January 29, 2009, a jury returned a verdict for Mr. Mason, awarding him $10,000.00 as compensation for "any emotional distress, inconvenience, mental anguish or loss of enjoyment of life he suffered as a result of Defendant's violation of Title VII and New Jersey's Law Against Discrimination." [Docket Entry No. 119]. Subsequent to the verdict in Mr. Mason's favor, the District Court conducted two settlement conferences where all remaining issues were resolved and the parties agreed that the issue of attorney's fees would be decided by this Court. The instant Motion for attorney's fees and expenses followed. In said Motion, Mr. Mason's attorney, Ms. Miller, seeks the following: $198,375.00 in legal fees (lodestar of $132,250.00 which consists of 529 hours of legal work compensated at $250.00 per hour, plus a fifty percent contingency enhancement of $66,125.00); $1,449.46 in expenses; and $1,533.33 in prejudgment interest.[2]

---

[2] It is this Court's understanding that pursuant to the terms set forth during the parties' post-verdict settlement conferences with the District Court, the question of attorney's fees and expenses was the *only* issue to be decided by this Court. Therefore, to the extent Ms. Miller seeks payment for prejudgment interest, that request is DENIED.

**II.     ANALYSIS**

**A.     Intervenor's Entitlement to Attorney's Fees**

A prevailing party is entitled to recover reasonable attorney's fees and expenses under both Title VII and the LAD.  Blakey v. Cont'l Airlines, Inc., 2 F.Supp.2d 598, 601 (D.N.J. 1998) (citing 42 U.S.C. § 2000e-5(k); N.J.S.A. 10:5-27.1).  A plaintiff is "prevailing" and thereby entitled to a fee award if he or she has succeeded on "any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks and citation omitted).

 In the present case, the jury found in favor of Mr. Mason in the amount of $10,000.00, with no differentiation between the claims brought pursuant to Title VII or the LAD.  As such, Mr. Mason is a "prevailing party" for purposes of awarding attorney's fees.  Nevertheless, Defendant argues that the instant Motion should fail, not because Mr. Mason is not a prevailing party, but because his attorney's efforts were "'merely duplicative' of those of the primary plaintiff" and therefore should "not result in an award of attorneys fees."  (Def.'s Opp'n at 9 (citations omitted)).

In this regard, Defendant argues that pursuant to the holding in Donnell v. United States of Am., 682 F.2d 240 (D.C. Cir. 1982), "Congress did not intend that a fee award for intervenors be 'as nearly automatic as it is for a party prevailing in his own right.'"  (Def.'s Opp'n at 9 (Donnell, 682 F.2d at 247)).  Defendant claims that it is obvious that "if an intervenor did nothing but simply show up at depositions, hearings and the trial itself . . . an award of attorneys' fees would be inappropriate."  (Id. at 10 (quoting Donnell, 682 F.2d at 249) (internal quotation marks omitted))).  Defendant claims that the same would hold true here, where the  intervenor's efforts "have been subordinate and cumulative to the efforts of the EEOC."  (Id.)  Indeed, Defendant argues that Mr.

3

Mason's attorney, Ms. Miller, took a secondary role to counsel for the EEOC. In addition, Defendant claims that had Mr. Mason not intervened in this litigation, there would have been no significant change in the outcome. Given Mr. Mason's alleged limited role in this litigation, Defendant argues against the award of attorney's fees. (Id. at 14).

The Court declines to adopt Defendant's argument that Ms. Miller is not entitled to recover any attorney's fees. The Court notes that in support of its argument that no fees should be awarded, Defendant relies primarily on a twenty-seven year old District of Columbia Circuit Court Case. Defendant does not provide the Court with any decision from the Third Circuit in support of its argument. While the Court agrees with the holding in Donnell that Congress did not intend a fee award for intervenors to be "as nearly automatic as it is for a party prevailing in his own right[,]" the Court finds that Ms. Miller's contributions to this case were substantial and not merely duplicative of those of the EEOC.[3]  682 F.2d at 246; see Commonwealth of Pa. v. Flaherty, 40 F.3d 57, 61 (3d Cir. 1994) (holding that award of fees to intervenor in § 1988 case justified only where intervening defendant made substantial contribution to successful result). As a result, the Court finds that Ms. Miller is entitled to recoup some measure of attorney's fees. The Court's analysis regarding the exact measure to be awarded follows.

**B.    Calculation of Fees**

The procedure for calculating attorney's fees is generally the same under both Title VII and the LAD, with the exception of contingency enhancements, which are provided for under the LAD but not permitted under Title VII. Here, the jury did not make separate findings on the Title VII and

---

[3]The Court notes that at oral argument Defendant conceded that Ms. Miller was entitled to recoup some measure of attorney's fees.

4

the LAD claims. Thus, because Mr. Mason "prevailed on claims that exist under LAD, New Jersey law will be used where applicable." Blakey, 2 F.Supp.2d at 602.

**1.     Lodestar Fee**

The first step in calculating reasonable attorneys fees under the LAD and Title VII requires the Court to determine the lodestar fee, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. Hensley, 461 U.S. at 433. The party requesting the fees bears the burden of proving that the request is reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The opposing party must make specific objections to the requested fee. Id. "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.. However, the district court cannot decrease a fee award based on factors not raised at all by the opposing party. Id.

**a.     Number of Hours Reasonably Expended**

The Supreme Court has held that counsel is expected to exercise "billing judgment" and that district courts "should exclude from this initial fee calculation hours that were not 'reasonably expended'" including "excessive, redundant, or otherwise unnecessary" work. Hensley, 461 U.S. at 434 (internal quotation marks and citations omitted). Mr. Mason's submitted billing indicates that Ms. Miller expended 529 hours on this case. As described below in Section c. "Adjustments to Lodestar," Defendant requests that these hours be reduced for several reasons.

**b.     Reasonable Rate**

In order to determine a reasonable hourly rate, the Court must assess the "skill and experience of the prevailing attorneys and compare their rates to the rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blakey, 2

F.Supp.2d at 602 (citing Rendine v. Pantzer, 141 N.J. 292, 337 (1995)).  In the instant matter, Mr. Mason seeks an hourly rate of $250.00, which Defendant does not oppose.

**c.     Adjustments to Lodestar**

Using the figures submitted by Mr. Mason for the number of hours Ms. Miller expended (529), as well as Ms. Miller's proposed reasonable market billing rate ($250.00 per hour), the lodestar is $132,250.00.  Defendant, however, requests several reductions to this lodestar.  These requests are considered below.

**i.     Billing for Travel**

Defendant opposes Mr. Mason's request to have Ms. Miller's travel time billed at $250.00 per hour.  Defendant argues that counsel's travel time should be billed at fifty-percent of the reasonable hourly rate.  (Def.'s Opp'n at 17).  Mr. Mason, however, argues that pursuant to the Third Circuit's decision in Interfaith Cmty. Org. v. Honeywell Int'l Inc., 426 F. 3d 694, 711 (3d Cir. 2005), "travel time . . . [is] compensated as part of attorneys fees and costs based on the prevailing rate in the forum of the litigation."  (Pl.'s Reply at 9).  As such, Mr. Mason argues that Ms. Miller should be compensated at her full billing rate.  Defendant does not disagree with the standard put forth by Mr. Mason, but instead argues that absent a showing that an attorney performed legal work while traveling to and from meetings, conferences, depositions and trial, he or she is not entitled to reimbursement for travel time at premium rates.  (Def.'s Opp'n at 17 (citing Daggett v. Kimmelman, 617 F. Supp. 1269, 1282 (D.N.J. 1985)).  Instead, Defendant argues that the prevailing rate for travel time in New Jersey is fifty percent of the attorney's reasonable rate.  (Id. (citing Erhart v. City of Atl. City, Civil Action No. 00-6209, 2006 U.S. Dist. LEXIS 57709, *23 (D.N.J. August 17, 2006)).

"[I]n order to determine the rate at which attorneys may be compensated for their travel time,

6

a court must look to the practice in the local community." Interfaith Cmty. Org., 426 F.3d at 711 (internal quotation marks and citation omitted). Thus, the Court looks at the prevailing rates at which travel time is compensated in the forum state, which in this matter is New Jersey. Here, while Mr. Mason argues that Ms. Miller should be compensated at the prevailing rates, he does not provide the Court with any support for the proposition that in New Jersey the prevailing rate at which travel time is compensated is an attorney's full billing rate. Indeed, the opposite appears to be true. Recent case law from the District of New Jersey establishes that the prevailing rate for travel time in New Jersey is fifty percent of the attorney's reasonable market rate. See Glass v. Snellbaker, Civil Action No. 05-1971 (JBS), 2008 WL 4416450, *9-10 (D.N.J. Sep 23, 2008); Erhart, 2006 U.S. Dist. LEXIS 57709, *23; Posa v. City of East Orange, No. Civ. 03-233 (FSH), 2005 WL 2205786, *5-6 (D.N.J. Sep 08, 2005). As a result, Ms. Miller shall be compensated at this rate, which equates to $125.00 per hour for travel time. Thus, the proposed lodestar shall be reduced by $7,687.50, the difference between the requested fee for travel time and the amended fee based on New Jersey's prevailing rate at which travel time is billed. The adjusted lodestar is therefore $124,562.50. A chart depicting all effected time entries follows:

| Date | Description | Hours | Requested Fee | Amended Fee with 50% Rate |
|---|---|---|---|---|
| 11/06/06 | Travel to and from Fed. R.Civ.P. 16 Conference | 3 | $750.00 | $375.00 |
| 12/06/06 | Travel to RU Law Library | .75 | $187.50 | $93.75 |
| 5/17/07 | Travel to and from court | 3.25 | $812.50 | $406.25 |
| 7/10/07 | Travel to and from Mason dep | 2 | $500.00 | $250.00 |
| 9/05/07 | Travel to and from settlement conf. | 3 | $750.00 | $375.00 |

| Date | Description | Hours | Requested Fee | Amended Fee with 50% Rate |
|---|---|---|---|---|
| 9/27/07 | Travel to and from RU Law Library | .75 | $187.50 | $93.75 |
| 1/02/08 | Travel to and from Mason continued dep. | .75 | $187.50 | $93.75 |
| 4/15/08 | Travel to RU Law Lib | .75 | $187.50 | $93.75 |
| 6/13/08 | Travel to and from Wiley dep | .75 | $187.50 | $93.75 |
| 6/16/08 | Travel to and from court | 3 | $750.00 | $375.00 |
| 10/02/08 | Travel to and from PTO Conference | 2.75 | $687.50 | $343.75 |
| 11/10/08 | Travel to and from Trenton Conference | 3.5 | $875.00 | $437.50 |
| 11/12/08 | Travel to and from RU Law Library | .75 | $187.50 | $93.75 |
| 12/04/08 | Travel to and from Rutgers Law Library | 1 | $250.00 | $125.00 |
| 12/09/08 | Travel to and from Rutgers Law Library | 1 | $250.00 | $125.00 |
| 12/15/08 | Travel to and from Downs dep. | 2.5 | $625.00 | $312.50 |
| 12/17/09 | Travel to and from Fed. D.C. Library Newark | .75 | $187.50 | $93.75 |
| 1/20/09 | Travel to and from Trenton | 3.75 | $937.50 | $468.75 |
| 1/22/09 | Travel to and from Trenton | 3.75 | $937.50 | $468.75 |
| 1/23/09 | Travel to and from Trenton | 4 | $1000.00 | $500.00 |
| 1/26/09 | Travel to and from Trenton | 3.75 | $937.50 | $468.75 |
| 1/27/09 | Travel to and from Trenton | 3.75 | $937.50 | $468.75 |
| 1/29/09 | Travel to and from Trenton | 3.5 | $875.00 | $437.50 |

| Date | Description | Hours | Requested Fee | Amended Fee with 50% Rate |
|---|---|---|---|---|
| 2/06/09 | Travel to RU Law Lib. | .75 | $187.50 | $93.75 |
| 2/19/09 | Travel to and from Trenton | 3.25 | $812.50 | $406.25 |
| 2/23/09 | Travel to and from RU Law Lib. | .75 | $187.50 | $93.75 |
| 2/25/09 | Travel to and from Court | 3.25 | $812.50 | $406.25 |
| 3/19/09 | Travel to and from RU Law Lib | .75 | $187.50 | $93.75 |
| **Totals:** | | 52.75 | $15,375.00 | $7,687.50 |

ii.     **Specificity of Entries**

The burden of establishing the lodestar rests on the fee applicant, who must provide appropriate documentation of the hours spent and the market rate. If the documentation is inadequate, a court may reduce the award accordingly. Hensley, 461 U.S. at 433.

The Third Circuit has defined what constitutes appropriate documentation by stating that a fee petition should include "fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys[.]'" Rode, 892 F.2d at 1190 (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). However, the Third Circuit explicitly rejected the requirement of time summaries, stating that a chronological listing of time spent per task is sufficient. Id. Indeed, the Third Circuit stated that, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id. (quoting Lindy Bros. 497 F.2d at 167) (internal quotation marks omitted). Nevertheless, to be successful, "[a] fee petition is required to be specific enough to allow the district

9

court 'to determine if the hours claimed are unreasonable for the work performed.'" Id. (quoting Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983)).

Here, Defendant challenges twenty-eight of the time entries submitted by Mr. Mason, arguing that they lack the requisite specificity. Twenty-one of the disputed entries reflect that Mr. Mason's attorney, Ms. Miller, either called or otherwise conferred with Mr. Mason and/or Mr. Ranis, counsel for the EEOC. Three reflect that Ms. Miller either wrote a letter or an email to Mr. Mason. Two indicate telephone calls between Ms. Miller and Mr. Mason's mother, Ieerline Wiley. One entry reflects that Ms. Miller reviewed documents and an email from Mr. Ranis, and one entry reflects that Ms. Miller reviewed case law.

Mr. Mason claims that no additional information regarding these entries could be provided without breaching the attorney-client and community-of-interest privileges.[4] The Court, however, is unpersuaded by this argument. In this District, broad claims of privilege are not sufficient. Instead, as evidenced by the law surrounding the sufficiency of privilege logs, where a claim of privilege is made, the party claiming same must not only identify the individuals involved in the communication, the date of the communication and the privilege asserted, but the party must also identify the general subject matter of the communication at issue. See, e.g., Torres v. Kuzniasz, 936 F.Supp. 1201, 1208-09 (D.N.J. 1996). The twenty-six disputed entries, which simply contain information such as "Tel w/M. Ranis[,]" "Tel. W/client[,]" "Letter to client"and "Reviewing case law" are insufficient. (Def.'s Opp'n Br. at 20-22). Additional information regarding the subject of

---

[4]In his Reply filed in further support of the instant Motion, Mr. Mason explains that the telephone calls between Ms. Miller and Ms. Wiley were made to arrange for Ms. Wiley's deposition. With this clarification, the Court finds that these entries are specific enough for the Court to determine that the time spent on same was reasonable. As such, the Court shall not exclude these entries in its calculation of the lodestar.

the telephone calls, letters and case law reviewed is lacking. Other entries, however, such as the January 10, 2007 entry, which states "Tel. w/Rains re Protective Order[,]" include this detail. (Ex. A to Miller Cert. at 2). While Ms. Miller's time entries need not have been overwrought with detail to be sufficient, they did need to contain sufficient information for the Court to determine whether the hours spent on the tasks in question were reasonable. The twenty-six unsupplemented, disputed entries lack this specificity. Consequently, the Court shall exclude the fees associated with same from the fee award. The lodestar will, therefore, be reduced by $4,000.00, making the adjusted lodestar $120,562.50. A chart depicting the disallowed time entries follows:

| Date | Description | Hours | Requested Fee |
|---|---|---|---|
| 5/11/06 | Tel w/M. Ranis | .25 | $62.50 |
| 10/23/06 | Tel/ w client | .25 | $62.50 |
| 10/24/06 | Tel M. Ranis | .75 | $187.50 |
| 10/24/06 | Review of docs. & Ranis email | .25 | $62.50 |
| 10/26/06 | Tel. M.Ranis | .25 | $62.50 |
| 11/08/06 | Tel. W/client | .25 | $62.50 |
| 11/10/06 | Tel. w/Ranis | .25 | $62.50 |
| 12/13/06 | Conf. W/Ranis | .5 | $125.00 |
| 6/27/07 | Conf. W/ M. Ranis | .5 | $125.00 |
| 7/09/07 | Conf. W/client | 2.0 | $500.00 |
| 7/22/07 | Tel. W/ Client | .25 | $62.50 |
| 8/03/07 | Letter to client | .25 | $62.50 |
| 9/04/07 | Tel/w client | .25 | $62.50 |
| 10/18/07 | Conf. W/M. Ranis | .5 | $125.00 |
| 12/05/07 | Tel. W/client | .25 | $62.50 |

| Date | Description | Hours | Requested Fee |
|---|---|---|---|
| 1/08/08 | Tel. W/Ranis | .5 | $125.00 |
| 1/16/08 | Tel. w/Ranis | .5 | $125.00 |
| 1/22/08 | Tel. W/Ranis | .5 | $125.00 |
| 4/21/08 | Letter to client | .25 | $62.50 |
| 6/04/08 | Tel. W/Ranis | .5 | $125.00 |
| 8/18/08 | Conf. W/ Client & Ranis | 1.5 | $375.00 |
| 8/25/08 | Tel. Conf. W/Ranis | 1.0 | $250.00 |
| 11/06/08 | Tel. W/client | .5 | $125.00 |
| 1/05/09 | Reviewing case law | 1.0 | $250.00 |
| 1/20/09 | Conf. w/ client | 2.5 | $625.00 |
| 1/22/09 | E-mail to client | .5 | $125.00 |
| **Totals:** | | 16.0 | $4,000.00 |

   iii.   **Limited Success in the Litigation**

In certain cases, a court may adjust the lodestar upward or downward to arrive at the appropriate fee award. Hensley, 461 U.S. at 434. Incomplete success is one of the most common bases for a downward adjustment in a fee award. In such cases, a plaintiff advances discrete, unrelated claims, and prevails on some but not others. Id. The Third Circuit has rejected, however, the downward adjustment of the lodestar for unsuccessful but related claims, finding that the successful and unsuccessful claims were legally or factually intertwined. Northeast Women's Ctr. v. McMonagle, 889 F.2d 466, 476-77 (3d Cir. 1989); Rode, 892 F.2d. at 1185-86 (holding that hours expended on claims against dismissed defendants are compensable "if plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against the defendants over whom plaintiff prevailed . . . .") (internal quotation marks and citation omitted).

12

Another basis for a downward adjustment is a party's limited success in the litigation. Indeed, "if the level of success achieved in the litigation is limited as compared to the relief sought," then the "court should reduce the lodestar fee." Rendine, 141 N.J. at 336. Unlike with a reduction based on a party's incomplete success, a reduction for limited success can be appropriate "'even where the plaintiff's claims were interrelated, nonfrivolous and raised in good faith.'" Id. (quoting Hensley, 461 U.S. at 436). Thus, despite the fact that there need not be proportionality between the damages awarded and the attorney's fees recovered, "[i]f . . . a plaintiff has achieved only partial or limited success, the product or hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount'" justifying a reduction in the fee award. Id. (quoting Hensley, 461 U.S. at 436).

Defendant requests that Ms. Miller's overall lodestar be reduced by fifty percent after the above-discussed deductions. Defendant bases this request in part on "the level of Intervenor's limited success as compared to his original demands[.]" (Def.'s Opp'n at 16). Defendant argues that "Intervenor began the litigation seeking an award of back pay spanning five years, significant punitive damages and a large award for emotional distress. Ultimately, Intervenor reduced his claim for back-pay to only the 2004 season, this Court dismissed his claim for punitive damages, and the jury awarded a mere $10,000 for emotional distress." (Id.) Given this limited success, Defendant requests the aforementioned fifty percent reduction.

Mr. Mason, however, argues that no reduction is warranted. In this regard, Mr. Mason claims that "there is no need for proportionality of damages with attorneys fees under LAD." (Pl.'s Reply at 7). Indeed, Mr. Mason argues that if such a requirement existed, then attorneys representing wealthy individuals in discrimination cases "would always be compensated more than those who

13

represent" less affluent clients "who are the least able . . . to find representation to protect their civil rights." (Id. at 8). Further, Mr. Mason claims that the success achieved in this matter was not limited as compared to the relief sought. Instead, Mr. Mason claims that he "was successful in the relief sought: emotional distress damages, injunctive relief and back pay." (Id.) Mr. Mason also argues that with respect to the injunctive relief awarded, "the public interest will be well served because" that relief "will over time affect hundreds of thousands of UPS job applicants who will no longer have to decide whether to follow their religious observances or work." (Id. at 7). In addition, Mr. Mason argues that he "alleged only one cause of action -- failure to accommodate --, and he succeeded on that count." (Id. at 8).

The Court agrees with Mr. Mason that there does not need to be any proportionality between the damages awarded and the attorney's fees requested. The Court, however, also recognizes that under certain circumstances a reduction in the fee award may be warranted because the lodestar is excessive in light of the success achieved by the prevailing party. See Rendine, 141 N.J. at 336. Here, Mr. Mason did not advance discrete, unrelated claims which would warrant a reduction in the lodestar based on the fact that certain claims were unsuccessful. Instead, Mr. Mason pursued related Title VII and LAD claims on which he achieved a measure of success as evidenced by the $10,000.00 jury award. Though Mr. Mason certainly did not succeed in recovering all of the damages he initially pursued, Mr. Mason did obtain much of the relief sought in his Complaint: damages for emotional distress, back pay and injunctive relief. Under these circumstances, the Court finds that the level of success achieved by Mr. Mason is not so limited as to warrant a reduction of Ms. Miller's proposed lodestar.

### iv.  Reduction for Unnecessary and/or Duplicative Work

As already stated, in determining the appropriate fee award, the Court "has a great deal of discretion to adjust the award." Blakey, 2 F.Supp.2d at 602. One basis for making a downward adjustment is that the work performed by the attorney seeking the fee award was "excessive, redundant, or otherwise unnecessary[.]" Hensley, 461 U.S. at 434.

Defendant argues that the Court should exercise its discretion to reduce "the requested lodestar . . . by fifty percent, after other applicable deductions" because Ms. Miller's "efforts were largely cumulative (and consistently subordinate) to those of the EEOC." (Def.'s Opp'n at 15-16). In this regard, Defendant claims that since the time of intervention, Ms. Miller took a backseat to the EEOC. For example, Defendant argues that (1) out of the twelve discovery depositions, Ms. Miller led only one (not even her client's) and did not even appear in person at all of the others; (2) in June 2007, the EEOC filed an extensive motion to compel, in response to which Ms. Miller filed a short letter with the Court relying on the EEOC's motion and raising an insignificant issue with regard to the propriety of an interrogatory certification; and (3) at trial, Ms. Miller took the lead in examining only one witness, John Ganley, and her examination lasted only twenty-five minutes with the EEOC following with nearly an additional twenty minutes of questioning.

Further, Defendant argues that had Mr. Mason "not intervened in the EEOC's lawsuit against UPS there would have been no change in the outcome." (Id. at 13). Defendant notes that "the recovery obtained in this lawsuit (compensatory damages, back-pay and injunctive relief) were all sought by the EEOC in its primary Complaint" and that "[e]ven without Mason's intervention, the EEOC would have obtained an award of compensatory damages for Mason and would have

15

negotiated the payment of back-pay and the terms of the injunctive relief sought in the EEOC's original Complaint." (Id. at 13-14).

In contrast, Mr. Mason argues that the fee award should not be reduced because the work performed by Ms. Miller was not duplicative or unnecessary. Mr. Mason argues that "it is 'ill grace'" for Defendant "to argue that the 'plaintiff should be expected to proceed with a lesser staff to prosecute his claim'" where Defendant had two local attorneys and at least two in-house counsel involved in defending this matter. (Pl.'s Reply at 2 (quoting Lockley v. Turner, 344 N.J. Super. 1, 28 (App. Div. 2001))). Further, Mr. Mason argues that Ms. Miller was not merely passively involved in the litigation but, instead, actively litigated the case making at least ten applications to the court to compel discovery and transmitting at least twenty-five letters to Defendant regarding discovery issues. Indeed, as argued by counsel during the Court's September 23, 2009 hearing, Ms. Miller not only actively participated in this matter, but, in fact, got the case moving by raising many of the aforementioned discovery issues while this litigation was still in its infancy.

In addition, Mr. Mason argues that Ms. Miller's efforts were neither subordinate to those of the EEOC nor were they unnecessary. For example, during oral argument on the instant Motion, Ms. Miller argued that, unlike the EEOC, which focused on Defendant's national policies, her efforts focused on the facts of this case. In this regard, Ms. Miller claimed that she elicited several significant facts, including that Mr. Mason was the only job applicant with a beard and that UPS had no other bearded employees in public contact positions between 2002 and the trial in this matter. Ms. Miller also argued that she obtained UPS's admission that there was no business necessity that required drivers' helpers to be beardless. Further, Mr. Mason claims that by simply comparing the differences between either Ms. Miller's and the EEOC's contested facts included in the Pre-Trial

16

Order, or their trial briefs, one can readily determine that Ms. Miller did not merely bootstrap her legal work to that performed by the EEOC. Additionally, Mr. Mason claims that the Court's adoption of the "interactive process" jury instruction proposed by Ms. Miller is further evidence of her contributions to the prosecution of this matter. (See Pl.'s Reply at 12).

The Court declines to exercise its discretion to impose a blanket reduction in Ms. Miller's fees based on the alleged "redundant, or otherwise unnecessary" nature of her work. Hensley, 461 U.S. at 434. While the results achieved in this litigation may have been the same if Ms. Miller never intervened in this matter on behalf of Mr. Mason, there is no way to know that that would have been the case; nor would such a result necessitate a finding that Ms. Miller's contributions were unnecessary. It appears to the Court that there were clear differences between the approach taken by the EEOC and Ms. Miller in pursuing this litigation. As such, the Court cannot find as a general matter that the worked performed by Ms. Miller was redundant or otherwise unnecessary. Further, Defendant did not challenge any of Ms. Miller's specific time entries as being "excessive, redundant, or otherwise unnecessary." Id. As a result, the Court shall not reduce the lodestar fee on this basis.

**2.    Fee Enhancement**

Contingency enhancements are not available under Title VII, but rather only under the LAD. Blakey, 2 F.Supp.2d at 607. Under the LAD, once the base lodestar fee has been determined, the Court should "consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." Rendine, 141 N.J. at 337. "[A] court's job simply will be to determine whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment[.]" Id. at 339 (quoting

17

Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 747, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

The risk of nonpayment can be mitigated in several ways.  For example, "[a]n attorney who has entered into a contingent fee contract in a suit seeking substantial damages has . . . significantly reduced his risk, for he has obtained, in exchange for his acceptance of the risk of nonpayment, the prospect of compensation greater than the prospective 'lodestar' amount."  Id. at 340 (internal quotation marks and citation omitted).  In addition, in cases in which the likelihood of success is unusually strong, a court may properly consider the inherent strength of the prevailing party's claim as a mitigating factor.  Id. at 341 (citing Hall v. Borough of Roselle, 747 F.2d 838, 843-44 (3d Cir. 1984) ("[O]ne can fairly conclude that from the outset the plaintiff had a very strong case and 'objectively viewed, the risk that plaintiff['s] counsel would come away empty handed was remote.'") (quoting McMullan v. Thornburgh, 570 F.Supp. 1070, 1076 (E.D.Pa.1983))).  Further, contingency enhancements normally range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar. Id. at 343.

Here, Mr. Mason is seeking a contingency-fee enhancement of fifty-percent.  The Court finds that to be excessive and not appropriate in this case.  At the outset, as stated by the Court in Rendine, enhancements in contingency cases typically range between twenty and thirty-five percent of the lodestar.  The Court does not see any reason why this case would warrant a higher than average enhancement.  Indeed, for the reasons explained below, the Court finds the opposite to be true.

Though Mr. Mason's attorney did take this case on a one hundred percent contingency basis, she was able to mitigate her risk of coming away with nothing.  In this regard, most compelling is

the fact that Mr. Mason had a strong likelihood of success of prevailing in this matter. At the time Mr. Mason intervened in this case, the EEOC had already issued a probable cause finding and had initiated this litigation. By intervening in an action that was the subject of a probable cause finding by the EEOC and that was, in fact, already being litigated by the EEOC, Ms. Miller significantly reduced the risk of non-payment. The fact that Mr. Mason and Ms. Miller entered into a contingency agreement in April 2005, approximately one year prior to Mr. Mason's intervention in this case, has no bearing on the Court's analysis. Ms. Miller does not seek fees for any legal work performed prior to Mr. Mason's intervention in this matter; nor rightfully could she. At issue, here, are only those fees generated on or after Mr. Mason's intervention, and, given the EEOC's involvement in this litigation prior to Mr. Mason's intervention, when Mr. Mason did intervene he had a strong likelihood of prevailing on his claims.

In addition, Ms. Miller's risk of non-payment was also mitigated by Mr. Mason's potential for a large recovery. When he intervened, Mr. Mason sought a substantial recovery from Defendant UPS, which is one of the largest employers in the United States. If Mr. Mason had been successful on all of his claims to the degree sought, he would have received significant compensation from Defendant. This potential for a large recovery, therefore, also mitigated Ms. Miller's risk of non-payment.

Given Ms. Miller's ability to mitigate her risk of coming away with nothing, the Court finds that a below-average fee enhancement is warranted. Consequently, the Court shall apply a five percent enhancement in this matter. Thus, using the adjusted lodestar of $120,562.50 and adding a five percent contingency enhancement, which equals $6,028.13, Ms. Miller shall be awarded $126,590.63 in attorney's fees.

3.      **Expenses**

In addition to the above-described attorney's fees, Mr. Mason seeks $1,449.46 in expenses. Defendant has not objected to Mr. Mason's claim for expenses, which the Court finds to be reasonable. Therefore, the Court shall award Mr. Mason $1,449.46 in expenses.

**III.    CONCLUSION AND ORDER**

For the foregoing reasons, it is on this 30th day of September, 2009, hereby

ORDERED that Mr. Mason's Motion is GRANTED IN PART; and it is further

ORDERED that Defendant shall pay Mr. Mason's attorney's fees in the amount of $126,590.63 and expenses in the amount of $1,449.46.

<u>s/Tonianne J. Bongiovanni</u>
**HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE**